**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **C.G. and T.D.,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**SAFI INVESTMENT, INC.,**<br><br>**Defendant.** | **Civil Action No. 1:26-cv-02999-MLB** |

**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 8(a)(2), 8(d)(1), 10(b), 12(b)(1), and 12(b)(6), and 28 U.S.C. § 1367, Defendant Safi Investment, Inc. ("Safi") moves to dismiss Plaintiffs' First Amended Complaint (Doc. 19) (the "Complaint") as an impermissible shotgun pleading. Alternatively, Safi moves to dismiss Count II for failure to state a claim, Count III for failure to state a claim and as time-barred, and Plaintiff T.D.'s claim in Count III for lack of subject-matter jurisdiction or, alternatively, requests that the Court decline to exercise supplemental jurisdiction over that claim. In support, Safi states as follows:

## ARGUMENT AND CITATION TO AUTHORITIES

### I. The Complaint Is an Impermissible Shotgun Pleading Under Rules 8(a)(2) and 10(b).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Rule 10(b) likewise requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and, "[i]f doing so would promote clarity," to state claims "founded on a separate transaction or occurrence" in separate counts. Fed. R. Civ. P. 10(b). These rules "require the pleader to present his claims discretely and succinctly," so that "his adversary can discern what he is claiming" and "the court can determine which facts support which claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The "unifying characteristic" of shotgun pleadings is that they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The Complaint exhibits three recognized defects: each count incorporates all preceding allegations and claims; it relies on generalized allegations concerning different Plaintiffs, time periods, and theories of liability without tying them to particular claims; and Count III combines two Plaintiffs' separate nuisance claims

arising from entirely different time periods into a single count. As a result, neither Defendant nor the Court can readily discern which allegations support which claims.

### A. Each successive count improperly incorporates all preceding allegations and claims.

The first and "most common type—by a long shot" of shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. The Eleventh Circuit calls this "the mortal sin of re-alleging all preceding counts." *Id.* at 1322.

Each count of the Complaint, along with its separate Damages section, incorporates "the paragraphs above as if fully restated herein." (Doc. 19 ¶¶ 96, 108, 114, 127.) Count I thus incorporates all ninety-five preceding paragraphs, including T.D.'s allegations concerning trafficking three years before C.G.'s. Count II incorporates those allegations and every paragraph of Count I; Count III incorporates both of C.G.'s federal claims, although T.D. asserts neither. The Damages section then incorporates the entire Complaint.

In *Magluta v. Samples*, "[e]ach count incorporate[d] by reference the allegations made in a section entitled 'General Factual Allegations' . . . while also incorporating the allegations of any count or counts that precede[d] it." 256 F.3d

1282, 1284 (11th Cir. 2001) (per curiam). Consequently, "each count [was] replete with factual allegations that could not possibly be material to that specific count," while "any allegations that [were] material [were] buried beneath innumerable pages of rambling irrelevancies." *Id.*; *see also Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) (describing "a quintessential 'shotgun' pleading" because of "its incorporation into successive counts [of] all preceding allegations and counts"); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.").

Here, C.G.'s federal claims incorporate T.D.'s allegations that hotel employees interacted with her traffickers in 2013, without identifying their relevance to C.G.'s alleged trafficking venture in 2016. (Doc. 19 ¶¶ 40-41, 96, 108.) Count III likewise incorporates both federal claims without distinguishing which allegations support either Plaintiff's nuisance claim. And the Damages section seeks punitive damages and attorneys' fees under Georgia law and the TVPRA on behalf of both Plaintiffs, although T.D. asserts no TVPRA claim. (*Id.* ¶¶ 127-130.)

As the Eleventh Circuit observed, the resulting confusion "is drastically exacerbated each time a new count is added to a complaint." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.4 (11th Cir. 2020). Where allegations of unspecified "conduct" incorporate every preceding claim, the question of "what 'conduct'" supports a particular claim admits the answer: "No one could know." *Id.* at 1356 n.5. Instead, it becomes "'everything that the plaintiff has previously mentioned anywhere in the complaint.'" *Id.*

### B. The Complaint's generalized allegations fail to identify which facts support each Plaintiff's claims.

The second category of shotgun pleading consists of complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. In *Barmapov v. Amuial*, the Eleventh Circuit condemned a complaint "rife with immaterial factual allegations" that "indiscriminately incorporate[d] and repeat[ed] 249 numbered paragraphs of factual allegations . . . without any effort to connect or separate which of those 249 factual allegations relate to a particular count." 986 F.3d 1321, 1325 (11th Cir. 2021).

The Complaint similarly devotes forty-seven paragraphs to Defendant's alleged knowledge of crime and trafficking generally, without distinguishing between C.G.'s trafficking in 2016 and T.D.'s in 2013. (Doc. 19 ¶¶ 49-95.) Among those allegations are thirteen online reviews dated August 2014 through July 2019,

all postdating T.D.'s alleged trafficking and eleven postdating C.G.'s. (*Id.* ¶ 74.) The Complaint also relies on witnesses whose alleged observations fall outside one Plaintiff's trafficking period, yet repeatedly refers to "the relevant period" without identifying which period it means. (*Id.* ¶¶ 51-52, 64, 86, 94.)

For C.G.'s TVPRA beneficiary claim, the relevant inquiry includes whether the venture "violated the TVPRA as to the plaintiff" and whether Defendant "had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). The Complaint nevertheless incorporates allegations concerning different trafficking periods without identifying which facts purportedly establish Defendant's participation in, or knowledge of, the venture involving C.G.

The allegations concerning Defendant's own conduct are similarly indiscriminate. The Complaint asserts that Defendant "owned, operated, managed, franchised, or otherwise controlled the Super 8," attributes conduct to "one or more of its officers, directors, agents, employees, or representatives," and alleges both direct and vicarious liability without identifying which acts support either theory. (Doc. 19 ¶¶ 8, 51, 104.) In *Barmapov*, the plaintiff likewise described a defendant as a "member," "manager," and "agent" of a joint venture without explaining his actual role. 986 F.3d at 1326. The Eleventh Circuit refused to require defendants to supply

that explanation: "If Barmapov himself cannot offer a coherent explanation for how the joint venture was structured, we cannot expect the defendants to do it for him by digging through 50 pages and 249 numbered paragraphs of scattershot factual allegations." *Id*.

The Complaint also alleges negligent failures involving security, employee training, and supervision without asserting a negligence count, while purporting to bring "each and every claim permissible under Georgia and federal law." (Doc. 19 ¶¶ 78-83, 128.) Thus, "[m]any of the factual allegations appear to relate to only one or two counts, or to none of the counts at all," leaving "a reader of the complaint [to] speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997).

### C. Count III improperly combines two Plaintiffs' separate nuisance claims into one count.

The third category of shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322-23. Rule 10(b) requires separate counts for claims "founded on a separate transaction or occurrence" when doing so "would promote clarity," and a properly drawn complaint "will present each claim for relief in a separate count." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Count III combines nuisance claims arising from two separate trafficking periods approximately three years apart. T.D. alleges that she was trafficked during spring and summer 2013 by multiple traffickers, while C.G. alleges that she was trafficked for approximately one month in spring 2016 by a single trafficker. (Doc. 19 ¶¶ 9-10, 27-28, 30-32.) Their allegations concerning hotel employees likewise involve different conduct during different periods. (*Id.* ¶¶ 15-19, 39-44.)

Yet Count III attributes both Plaintiffs' injuries to Defendant's undifferentiated "acts and omissions," alleging that those acts "caused special damages to Plaintiffs" without identifying which conduct caused which Plaintiff's injuries. (*Id.* ¶¶ 121, 125.) Because an individual may recover for public nuisance only when it "causes special damage to an individual," O.C.G.A. § 41-1-3, each Plaintiff's claim depends on the conduct and resulting injuries particular to her alleged trafficking. Count III identifies neither separately, although the claims arise from distinct occurrences and allege different injuries.

**D. The Complaint should be dismissed under Rules 8(a)(2) and 10(b).**

Whether Plaintiffs have sufficiently alleged the elements of any individual claim presents "the separate question of whether the claims in [a] complaint are so poorly pleaded that they warrant a dismissal . . . regardless of whether they state viable claims." *Weiland*, 792 F.3d at 1325. A shotgun complaint "is never plain

because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Est. of Bass*, 947 F.3d at 1358. And "[i]t is not the proper function of courts in this Circuit to parse out such incomprehensible allegations." *Id.*

The Eleventh Circuit has "little tolerance" for shotgun pleadings, which are "flatly forbidden by the spirit, if not the letter, of these rules." *Barmapov*, 986 F.3d at 1324 (alterations adopted) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Weiland*, 792 F.3d at 1320). A district court's "inherent authority to control its docket and ensure the prompt resolution of lawsuits" therefore "includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1295. Indeed, Judge Thrash held that a plaintiff whose complaint indiscriminately incorporated preceding allegations "ha[d] indisputably committed the 'cardinal' sin of shotgun pleading." *Farr v. CTG Hosp. Grp., LLC*, No. 1:22-cv-883-TWT, 2024 U.S. Dist. LEXIS 196702, at *5-7 (N.D. Ga. Oct. 29, 2024).

Because Plaintiffs' successive counts incorporate unrelated allegations and claims, fail to distinguish the factual basis of each Plaintiff's recovery, and combine separate nuisance claims in a single count, the Complaint does not present Plaintiffs' claims "discretely and succinctly," as Rules 8(a)(2) and 10(b) require. *Weiland*, 792 F.3d at 1320. It should be dismissed as an impermissible shotgun pleading.

## II. Count II Fails Because § 2255 Does Not Authorize Civil Beneficiary Liability and the Complaint Does Not Plausibly Allege a Violation of § 1591 by Defendant.

Count II seeks to hold Defendant liable under 18 U.S.C. § 2255 because it allegedly "knowingly benefited from participating in a venture that it knew or should have known engaged in an act of sex trafficking." (Doc. 19 ¶ 111.) But that is the civil beneficiary standard under § 1595(a), which C.G. already invokes in Count I. Section 2255 does not incorporate that standard. It permits recovery for a predicate violation of § 1591, and the Complaint does not plausibly allege that Defendant committed one.

### A. Section 2255 Does Not Authorize the Beneficiary-Liability Theory Pleaded in Count II.

Section 2255(a) permits "[a]ny person who, while a minor, was a victim of a violation of" certain federal offenses, including § 1591, "and who suffers personal injury as a result of such violation" to sue for actual damages or "liquidated damages in the amount of $150,000." 18 U.S.C. § 2255(a). Unlike § 1595(a), which expressly authorizes suit "against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)," § 2255 contains no comparable beneficiary-liability provision. As the Eleventh Circuit explained, a trafficking victim "can sue

a perpetrator of sex trafficking—i.e., someone who has violated the criminal statute—without resort to the beneficiary cause of action." *Red Roof*, 21 F.4th at 724.

That distinction is deliberate. Congress "expanded the civil cause of action in § 1595" to include beneficiaries in 2008, *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1267-68 (11th Cir. 2026), but did not incorporate that language when it added § 1591 to § 2255's predicate offenses in 2013. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067; Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1212(a), 127 Stat. 54, 143.

The Supreme Court has long held that "Congress knew how to impose aiding and abetting liability when it chose to do so," *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994), and that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors," *id.* at 182. Because "statutory silence on the subject of secondary liability means there is none," *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc), *superseded by statute*, Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-

222, § 4(a), 130 Stat. 852, 854 (2016), courts applying *Central Bank* have declined to recognize such liability under § 2255.

In *Doe 9 v. Varsity Brands, LLC*, the court held that "Section 2255 makes no mention of secondary liability" and, because "Central Bank's rationale is not limited to the context of federal securities laws," "decline[d] to read secondary liability into § 2255." 679 F. Supp. 3d 464, 481-82 (D.S.C. 2023). Other courts have reached the same conclusion. *See Rosenblum v. Passes, Inc.*, No. 2:25-cv-08457-JLS-PD, 2026 U.S. Dist. LEXIS 53906, at *21-22 (C.D. Cal. Feb. 3, 2026) (concluding that "in the absence of any indication that Congress intended to include aiding and abetting liability in § 2255, Plaintiff cannot bring such a claim"); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (concluding that "under Central Bank the lack of any reference to secondary liability in § 2255 is fatal to the plaintiffs' position"); *Mandel v. Daskal*, No. 23-CV-7352 (RER) (VMS), 2025 U.S. Dist. LEXIS 165967, at *12 (E.D.N.Y. Aug. 25, 2025) (holding that because "section 2255 is silent on secondary liability," defendants "cannot be held secondarily liable as aiders and abettors under that statute"); *Doe 1 v. Varsity Brands, LLC*, 724 F. Supp. 3d 463, 470 (E.D.N.C. 2024) (adopting "Central Bank's observation and ultimately the Doe 9 court's § 2255 interpretationcrim").

Count II nevertheless seeks to impose liability because Defendant allegedly benefited from a venture that it "knew or should have known" engaged in trafficking—the same theory expressly pleaded under § 1595(a) in Count I. (Doc. 19 ¶¶ 96-107, 110-112.) Section 2255 does not provide an alternative means of pursuing that civil beneficiary theory. C.G. must instead plausibly allege that Defendant itself violated § 1591, including its criminal beneficiary provision. She has not done so.

### B. The Complaint does not plausibly allege that Defendant violated § 1591.

Section 1591 prohibits two forms of conduct. Subsection (a)(1) applies to anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person." 18 U.S.C. § 1591(a)(1). Subsection (a)(2) reaches anyone who knowingly "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." *Id.* § 1591(a)(2). Both require the prescribed conduct to occur "knowing, or . . . in reckless disregard of the fact," that force, fraud, or coercion will be used to cause a commercial sex act, or "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." *Id.* § 1591(a). And criminal "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id.* § 1591(e)(4).

These requirements differ materially from § 1595(a)'s civil beneficiary standard. Section 1591(a) "includes a scienter requirement that does not appear in Section 1595(a)." *Red Roof*, 21 F.4th at 724. While § 1595(a) "can be satisfied by an element of constructive knowledge," § 1591 "requires that the defendant benefited from participating in a venture that it knew was engaging in sex trafficking." *M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1273-74 (11th Cir. 2024).

*M.H.* is particularly instructive. There, the plaintiffs alleged that the defendant "knowingly benefited from participation in what it knew or should have known was a sex trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a)." *Id.* at 1276. The Eleventh Circuit held that although those accusations "state the elements for sex trafficking under section 1595," they "are not factual allegations plausibly suggesting that Omegle.com had actual knowledge" of the trafficking. *Id.* The allegations might establish that the defendant "should have known (i.e., constructive knowledge)" of the abuse, but "the law demands more than constructive knowledge." *Id.* Accordingly, the court held that the plaintiffs "failed to state a claim that Omegle.com's conduct violates 18 U.S.C. § 1591." *Id.*

Count II relies on the same allegation rejected in *M.H.*: that Defendant "knowingly benefited from participating in a venture that it knew or should have known engaged in an act of sex trafficking." (Doc. 19 ¶ 111.) The Complaint

likewise repeatedly alleges that Defendant "knew or should have known" of C.G.'s trafficking based on signs and behaviors observed at the hotel. (*Id.* ¶¶ 10, 14, 18, 20, 22.) But such allegations establish, at most, constructive knowledge, which *M.H.* expressly held insufficient to establish a § 1591 violation. 122 F.4th at 1276.

Nor do the remaining allegations plausibly establish Defendant's own criminal participation. Plaintiffs allege that Defendant rented rooms to C.G.'s trafficker and received payment for those rooms. (Doc. 19 ¶¶ 7(a), 26, 98.) Yet "[m]erely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture'" even under the civil standard, because "something more than engaging in an ordinary buyer-seller transaction is required." *A.G.*, 171 F.4th at 1269 (quoting *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024)); *see also Red Roof*, 21 F.4th at 727 ("[O]bserving something is not the same as participating in it."). Criminal beneficiary liability requires the further showing of "knowingly assisting, supporting, or facilitating" a § 1591(a)(1) violation. 18 U.S.C. § 1591(e)(4); *see also Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation.").

Ultimately, Count II alleges that Defendant should have recognized and prevented trafficking committed by someone else. That may describe Plaintiffs' theory under § 1595(a), but it does not plausibly establish Defendant's own violation of § 1591. Because § 2255 does not authorize liability under § 1595(a)'s civil beneficiary standard, Count II fails as a matter of law.

## III. Plaintiffs' Nuisance Claims in Count III Are Time-Barred and Independently Fail to State a Claim for Public Nuisance Under Georgia Law.

Count III seeks damages for the personal injuries Plaintiffs suffered when traffickers sold them for sex at the Super 8 in 2013 and 2016, under a theory of "public nuisance and/or per se public nuisance." (Doc. 19 at 39-41; *id*. ¶¶ 121, 126, 128.) But the Complaint alleges neither a public nuisance nor a nuisance per se. And regardless of the label Plaintiffs attach to their claims, Georgia's two-year statute of limitations bars their recovery for personal injuries sustained a decade or more before suit.

### A. Plaintiffs do not plausibly allege a public nuisance.

"A public nuisance is one which damages all persons who come within the sphere of its operation," whereas "[a] private nuisance is one limited in its injurious effects to one or a few individuals." O.C.G.A. § 41-1-2. Although "all persons" does not mean that "every person in the area must have been actually hurt," the nuisance

must injure "those of the public who may actually come in contact with it" and "affect[] rights which are common to all within a particular area." *City of Douglasville v. Queen*, 270 Ga. 770, 774 (1999)); *see also White v. Ga. Power Co.*, 265 Ga. App. 664, 668 (2004) (explaining that a public nuisance "must injure those of the public who actually come in contact with it").

In *McArthur v. Beech Haven Baptist Church of Athens*, the Court of Appeals applied these principles to allegations that churches knew of scout leaders' sexual abuse over decades but concealed it and failed to protect the victims. 368 Ga. App. 525, 525-26 (2023). The court reaffirmed that "the alleged abuse, even against multiple victims across multiple years, was insufficient to constitute a public nuisance." *Id.* at 534-35. Although the conduct caused "terrible injury to the victims of the abuse," it "did not harm all persons who came into the sphere of church operations." *Id.* at 535 (quoting *McArthur v. Beech Haven Baptist Church of Athens*, 361 Ga. App. 877, 881 (2021)). Nor did the plaintiffs "allege that the conduct had appreciable blighting effect on the surrounding community, such as a gambling establishment or unlicensed liquor store." *Id.*

The same distinction applies here. Plaintiffs allege serious personal injuries from trafficking at the Super 8, but those injuries were inflicted upon them as individual victims, not upon all persons who encountered the hotel. (Doc. 19 ¶¶ 9-

10, 27-28, 121, 128.) Their additional assertions that the hotel had "an appreciable blighting effect on the surrounding community," "encouraged idleness, loitering, vagrancy," and harmed "everyone who encountered" the alleged criminal activity (*id*. ¶¶ 71-73, 118-120) do not establish otherwise. They merely recite the requisite public harm without sufficient factual allegations showing that the conditions injured all persons within the hotel's sphere of operation. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, "[a] public nuisance generally gives no right of action to any individual" unless "a public nuisance in which the public does not participate causes special damage to an individual." O.C.G.A. § 41-1-3. Plaintiffs allege no personal injury caused by the purported community blight or criminal activity affecting the surrounding area. They seek damages for injuries inflicted by their traffickers. (Doc. 19 ¶¶ 9-10, 27-28, 121, 128.) Because the Complaint alleges neither a condition injuring the public generally nor special damage to Plaintiffs caused by that condition, Count III fails to state a public-nuisance claim.

**B. Plaintiffs do not plausibly allege a nuisance per se.**

Plaintiffs alternatively invoke a nuisance-per-se theory. But a nuisance per se is an activity that constitutes a nuisance "at all times and under all circumstances

regardless of the location or surrounding," and "[a] lawful business is not per se a nuisance." *Se. Liquid Fertilizer Co. v. Chapman*, 103 Ga. App. 773, 775 (1961). A lawful business may instead "become a nuisance per accidens by improper manner of operation or improper connected acts." *Warren Co. v. Dickson*, 185 Ga. 481, 484 (1938). Plaintiffs allege only that Defendant "knowingly and/or negligently turned a blind eye" to trafficking and failed "to remedy the dangerous condition." (Doc. 19 ¶¶ 122, 126.) Those allegations describe, at most, a nuisance per accidens. See Se. Liquid Fertilizer, 103 Ga. App. at 775. They also "stem from defendants' alleged failure to keep the premises safe and, essentially, constitute a breach of the same duty to protect" the victim. *Traicoff v. Withers*, 247 Ga. App. 428, 429 n.5 (2000).

### C. Plaintiffs' nuisance claims are barred by Georgia's two-year statute of limitations for personal-injury claims.

Georgia requires that "actions for injuries to the person" be brought within two years after accrual. O.C.G.A. § 9-3-33. The applicable limitations period depends on "the nature of the injury sustained rather than the legal theory underlying the claim for relief." *Daniel v. Am. Optical Corp.*, 251 Ga. 166, 168 (1983). Georgia assigns a nuisance claim the limitations period of the injury it redresses. Claims for damage to land fall under the four-year statute for "actions for trespass upon or damage to realty," O.C.G.A. § 9-3-30(a); *see Wise Bus. Forms, Inc. v. Forsyth Cnty.*, 317 Ga. 636, 641-43 (2023), while claims for damage to personal property fall under

the four-year statute for "actions for injuries to personalty," O.C.G.A. § 9-3-31; *see City Council of Augusta v. Lombard*, 101 Ga. 724, 726, 729-30 (1897). Claims for personal injury, by contrast, fall under the two-year statute in § 9-3-33. *See Daniel*, 251 Ga. at 168. In each case, the claim accrues "from the time when the special injury is occasioned." *Lombard*, 101 Ga. at 728; *accord U-Haul Co. of W. Ga. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 567 (1981).

In *Georgia Railway & Electric Co. v. Tompkins*, the Supreme Court of Georgia applied the ordinary two-year limitations period to personal injuries caused by a public nuisance. 138 Ga. 596, 598-600 (1912). Although the defendant had unlawfully obstructed a public highway, the plaintiff's claim was governed by the limitations period for personal injuries: "[i]f the plaintiff had a cause of action arising from a personal injury to him, it could not well be barred before it arose, and it was not barred afterward." *Id.* at 599. The limitations period applicable to prosecution of the public obstruction "ha[d] no application to a suit by one who suffers a personal injury by reason of the structure." *Id.* at 600.

Count III likewise seeks damages for injuries to the person, including "damages to [Plaintiffs'] health, including mental and emotional harm, pain and suffering," "physical injuries," and "mental anguish." (Doc. 19 ¶¶ 121, 128.) Because "the nature of the injury sustained . . . is an injury to the person, OCGA §

9-3-33 . . . applies." *Daniel*, 251 Ga. at 168; *see also G.W. v. Northbrook Indus., Inc.*, No. 1:20-cv-05232-JPB, 2022 U.S. Dist. LEXIS 93263, at *12-14 (N.D. Ga. May 24, 2022) (explaining that a hotel negligence claim arising from trafficking in June 2017 "should have been filed no later than June 2019").

The untimeliness is "apparent from the face of the complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). T.D. alleges that she was trafficked "[f]or weeks in the spring and summer of 2013," and C.G. "[f]or approximately one month in the spring of 2016," when she was seventeen. (Doc. 19 ¶¶ 1, 9, 27.) T.D.'s claim therefore expired in 2015, and C.G.'s claim, tolled during her minority under O.C.G.A. § 9-3-90(b), expired no later than spring 2019. Plaintiffs did not sue until 2026. (Doc. 1.) The Complaint alleges no facts supporting further tolling.

Nor does the allegation of a "continuous and repetitious condition" (Doc. 19 ¶ 126) alter the accrual of Plaintiffs' claims. Although "every continuance of the nuisance is a fresh nuisance for which a fresh action will lie," each action "accrues at the time of such continuance." *Lombard*, 101 Ga. at 727. Plaintiffs allege no injury at the Super 8 after 2013 and 2016. Count III is therefore barred by Georgia's two-year statute of limitations.

## IV. The Court Lacks Supplemental Jurisdiction Over T.D.'s Nuisance Claim and, Alternatively, Should Decline to Exercise It.

T.D. asserts only the Georgia nuisance claim in Count III. (Doc. 19 ¶¶ 114-126.) Although "the pleader must affirmatively allege facts demonstrating the existence of jurisdiction," *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994), the Complaint alleges only that jurisdiction is proper. It identifies no jurisdictional statute, no party's citizenship, and no amount in controversy. (Doc. 19 ¶¶ 2, 4.) T.D.'s claim therefore depends on supplemental jurisdiction under 28 U.S.C. § 1367, which Plaintiffs bear the burden of establishing. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). On this facial challenge, the Court asks whether Plaintiffs have "sufficiently alleged a basis of subject matter jurisdiction." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Supplemental jurisdiction in particular is "ordinarily determined on the pleadings." *Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997).

### A. Plaintiff T T.D.'s nuisance claim does not share a common nucleus of operative fact with C.G.'s federal claims.

Section 1367(a) extends only to claims "which arise out of a common nucleus of operative fact with a substantial federal claim." *Lucero*, 121 F.3d at 597. The test is "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir.

1996). An additional plaintiff's claims qualify when they "involve the same facts, occurrences, witnesses, and evidence" as the claims already properly before the court. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1567 (11th Cir. 1994). In *Hudson*, even claims by the same plaintiffs against the same defendant lacked a "sufficient nexus between the federal and state causes" because "[t]he alleged facts underlying [the state claim] [were] completely unrelated to the allegations in support of the [federal] claims." 90 F.3d at 456.

C.G.'s federal claims arise from her trafficking by one trafficker for approximately one month in spring 2016 and Defendant's alleged participation in that venture. (Doc. 19 ¶¶ 9-26, 98, 108-113.) T.D.'s nuisance claim arises from trafficking by different individuals nearly three years earlier, involving different alleged conduct by hotel employees. (*Id.* ¶¶ 27-48, 114-126.) The Complaint identifies no common trafficker, employee, room, or transaction connecting the two periods. Nor does any identified declarant or online review encompass both trafficking periods. (*Id.* ¶¶ 52, 64, 74.)

C.G.'s TVPRA claim concerns Defendant's alleged participation in her trafficking in 2016, while T.D.'s concerns separate events in 2013. Allegations of criminal activity and Defendant's general knowledge may supply background evidence, but neither Plaintiff must establish the other's trafficking to prove her own

claim. See *White v. Addante*, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (finding no common nucleus where "[the wife] need not establish that [the husband] was assaulted in order to prove that her arrest was unconstitutional").

The claims thus share a defendant and location, not the "same facts, occurrences, witnesses, and evidence" required to establish supplemental jurisdiction. *Palmer*, 22 F.3d at 1567. Because they lack a "sufficient nexus between the federal and state causes," *Hudson*, 90 F.3d at 456, T.D.'s claim falls outside § 1367(a) and should be dismissed without prejudice under Rule 12(b)(1).

**B. Alternatively, the Court should decline to exercise supplemental jurisdiction under § 1367(c).**

Section 1367(c) permits the Court to decline supplemental jurisdiction where a claim "raises a novel or complex issue of State law," "substantially predominates over the claim or claims over which the district court has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (2), (4). "Any one of the section 1367(c) factors is sufficient." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). In exercising that discretion, "[n]eedless decisions of state law should be avoided." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although "[g]enerally, state tort claims are not considered novel or complex," *Parker*, 468 F.3d at 743, T.D.'s claim raises questions concerning the application of

Georgia public-nuisance law to sex trafficking and the limitations period governing resulting personal injuries. The Georgia Court of Appeals has held that sexual abuse, "even against multiple victims across multiple years," does not constitute a public nuisance. *McArthur*, 368 Ga. App. at 534-35. A court in this District likewise observed that "[s]ex trafficking is an inherently personal offense, and consequently, it does not mesh well with the concept of public nuisance." *E.M. v. Tucker Inn Inc.*, No. 1:22-cv-02559-WMR, 2024 U.S. Dist. LEXIS 158236, at *23 (N.D. Ga. July 15, 2024).

T.D.'s separate claim would also substantially expand the litigation. State issues predominate when they outweigh the federal claims "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Id.* Her nuisance claim would require evidence concerning a different victim, different traffickers, different hotel employees, and events three years before C.G.'s federal claims, together with proof that the alleged nuisance damaged "all persons who come within the sphere of its operation." O.C.G.A. § 41-1-2. None of that separate factual inquiry is necessary to establish C.G.'s federal claims.

The resulting expansion of discovery and trial also presents "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). As one court observed, "[t]he distinct possibility of two separate sets of plaintiffs is such an exceptional

circumstance" where their separate claims "would undoubtedly confuse a jury." *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 783 (E.D.N.C. 1998).

At this pleading stage, no substantial resources have been committed to resolving T.D.'s claim. The Court's discretion turns in part on "convenience, fairness to the parties, and whether all the claims would be expected to be tried together." *Palmer*, 22 F.3d at 1569. Claims arising from different victims' trafficking by different perpetrators three years apart would not "ordinarily be expected to [be tried] all in one judicial proceeding." *Gibbs*, 383 U.S. at 725.

Accordingly, even if § 1367(a) permits supplemental jurisdiction, the Court should decline to exercise it under § 1367(c)(1), (2), or (4). If the Court dismisses C.G.'s federal claims, § 1367(c)(3) provides an additional ground for declining jurisdiction. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). T.D.'s nuisance claim should be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Safi Investment, Inc. respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint as an impermissible shotgun pleading. Alternatively, the Court should dismiss Count II for

failure to state a claim, dismiss Count III as time-barred and for failure to state a claim under Georgia law, and dismiss Plaintiff T.D.'s claim in Count III for lack of subject-matter jurisdiction or decline to exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c). Defendant further requests such other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of October, 2026.

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

*/s/ Sarah J. Unatin*

Patrick B. Moore
Georgia Bar No. 520390
Lisa K. Whitfield
Georgia Bar No. 428950
Sarah J. Unatin
Georgia Bar No. 953061
*Counsel for Defendant Safi Investment, Inc.*

3344 Peachtree Rd, N.E., Ste 2400
Atlanta, Georgia 30326
Tel. (404) 876-2700 | Fax (404) 875-9433
Pmoore@wwhgd.com
lwhitfield@wwhgd.com
Sunatin@wwhgd.com

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this pleading complies with the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D. (N.D. Ga.) in that it is composed in 14-point Times New Roman font.

This 29th day of October, 2026.

WEINBERG WHEELER HUDGINS
GUNN & DIAL, LLC

*/s/ Sarah J. Unatin*
Sarah J. Unatin
Georgia Bar No. 953061

**CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT**

The undersigned counsel hereby certifies that, prior to filing this Motion, counsel for the parties met and conferred in compliance with Section K.1 of the Court's Standing Order.

This 29th day of October, 2026.

WEINBERG WHEELER HUDGINS
GUNN & DIAL, LLC

*/s/ Sarah J. Unatin*
Sarah J. Unatin
Georgia Bar No. 953061

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

Pursuant to the Court's Standing Order, undersigned counsel certifies that no generative AI was used in the drafting or preparation of this filing (including in any research for the filing).

This 29th day of October, 2026.

WEINBERG WHEELER HUDGINS
GUNN & DIAL, LLC

*/s/* *Sarah J. Unatin*
Sarah J. Unatin
Georgia Bar No. 953061

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

This 29th day of October, 2026.

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

*/s/ Sarah J. Unatin*
Patrick B. Moore
Georgia Bar No. 520390
Lisa K. Whitfield
Georgia Bar No. 428950
Sarah J. Unatin
Georgia Bar No. 953061
*Counsel for Defendant Safi Investment, Inc.*

3344 Peachtree Rd, N.E., Ste 2400
Atlanta, Georgia 30326
Tel. (404) 876-2700 | Fax (404) 875-9433
Pmoore@wwhgd.com
lwhitfield@wwhgd.com
Sunatin@wwhgd.com