UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| C.G. and T.D.,<br><br>Plaintiffs,<br><br>v.<br><br>Safi Investment, Inc.,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:26-cv-02999-MLB |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## INTRODUCTION

Safi Investment, Inc. ("Safi") advances several scattershot arguments in its motion in hopes that one of them might stick. But what it doesn't do is seek dismissal of C.G.'s claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. And it doesn't dispute what the First Amended Complaint ("FAC") alleges: that Safi owned and operated a hotel where women and girls were repeatedly sold for sex, and where employees assisted traffickers by accepting bribes, warning them of police activity, and removing evidence of commercial sex. C.G. was just seventeen years old when she was trafficked there in 2016. T.D. was trafficked at the same hotel three years earlier, amid similar conditions.

Safi's arguments require the Court to make several improper leaps, including, among others, (1) making factual findings that Safi's facilitation of sex trafficking

was an accident, and not intentional as Plaintiffs alternatively allege; (2) ignoring that Congress enacted a broad and detailed remedial statutory scheme to address sex trafficking; and (3) finding for the first time in Georgia history that Georgia's public-nuisance claim (a claim brought on behalf of the public) is subject to a statute of limitations that rewards wrongdoers and imposes laches on the public itself.

That's not all that's wrong with Safi's motion, but those three points are enough to defeat the motion in its entirety, as Plaintiffs explain below.

## STATEMENT OF FACTS

Plaintiffs' claims arise from their sex trafficking at the Super 8 located at 4979 Old National Highway, College Park, Georgia 30349 ("Super 8"). [Doc. 19 ¶ 1]. Safi owned, operated, managed, franchised, or otherwise controlled the Super 8 and employed or controlled the employees working there. *Id.* ¶ 51. C.G. was sold for sex at the hotel in the spring of 2016, when she was seventeen years old. *Id.* ¶¶ 1, 9. T.D. was sold for sex at the same hotel for weeks during the spring and summer of 2013. *Id.* ¶¶ 1, 27.

C.G. was trafficked at the Super 8 for approximately one month by a violent trafficker who forced her to have sex with six to seven men each day. *Id.* ¶¶ 9–10. She was trafficked alongside other girls, sometimes sharing a room with five other victims. *Id.* ¶¶ 11–12. Together, they were purchased for sex approximately thirty-five times each day. *Id.* C.G. accompanied her trafficker to the front desk when he

checked in using false identification and when he requested room changes on at least three occasions. *Id.* ¶¶ 15–16. Front-desk employees repeatedly called their room to warn her trafficker that police were on the property. *Id.* ¶ 17. Housekeeping employees encountered C.G. daily and found trash cans filled with used condoms, boxes of condoms, lubricant, and other evidence of commercial sex. *Id.* ¶ 18. Employees knowingly removed and disposed of that evidence in coordination with or for the benefit of her trafficker, hindering potential police investigations. *Id.* ¶ 19.

Three years earlier, T.D. was trafficked at the Super 8 under similar conditions. Her violent traffickers sold her to as many as four men each day, alongside several other victims. *Id.* ¶¶ 27–35. Safi placed trafficking victims toward the rear of the hotel and repeatedly moved T.D. and her traffickers between rooms, concealing their activities from public view. *Id.* ¶¶ 30–32. Hotel employees were familiar with T.D.'s trafficking group, and a front-desk employee purchased one of its members for sex at the hotel. *Id.* ¶¶ 40–41. Housekeeping employees regularly encountered drugs, firearms, used condoms, and other evidence of trafficking in the rooms. *Id.* ¶ 42. Employees also knowingly removed and disposed of evidence of T.D.'s trafficking in coordination with or for the benefit of her traffickers. *Id.* ¶ 44.

The trafficking of C.G. and T.D. occurred amid widespread prostitution, sex trafficking, and related criminal activity at the Super 8. Women and girls openly solicited buyers throughout the property and along the surrounding streets, while

commercial sex occurred in hotel rooms and vehicles in the parking lot. *Id.* ¶¶ 53–76. A maintenance worker regularly observed prostitution, sex trafficking, drug activity, and other criminal conduct, including women and girls entering rooms with adult men who departed shortly thereafter. *Id.* ¶¶ 53–54. On one occasion, he entered a room and observed thirty to forty used condoms scattered across the floor. *Id.* ¶ 58. Police frequently investigated criminal activity and made arrests at the property. *Id.* ¶ 76.

Safi's owner, office manager, and employees regularly walked the property and could monitor activity through security cameras located in the office. *Id.* ¶¶ 60–61. The FAC alleges that Safi maintained a policy or practice of permitting and facilitating sex trafficking, including by providing rooms to traffickers, warning them of police activity, and knowingly disposing of evidence of their crimes. *Id.* ¶¶ 25–26. Safi financially benefited from C.G.'s and T.D.'s trafficking through revenue generated by the hotel, including rental fees for the rooms where they were sold for sex. *Id.* ¶¶ 31–32, 98–100.

## ARGUMENT AND CITATION OF AUTHORITY

At the motion-to-dismiss stage, the Court must assume the truth of the complaint's factual allegations and construe the facts "in the light most favorable to the plaintiff." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016). Still, "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide

evidence for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## I. C.G. States a Claim Under 18 U.S.C. § 2255 ("Masha's Law")

Congress created two complementary civil remedies for trafficking victims. Section 1595 establishes civil liability for perpetrators and for beneficiaries who knew or should have known that the venture in which they participated engaged in trafficking. Section 2255 provides *additional* remedies when the victim of a § 1591 violation was a minor and eliminates the limitations period for those remedies.[1]

Congress knew how to distinguish perpetrators from beneficiaries. It did that in § 1595. When Congress expanded § 2255 in 2013 to include § 1591 violations, it did not limit the new remedy to perpetrators. It didn't mention them, or any other potential defendant at all. Thus, Safi asks the Court to create a limitation Congress did not enact. Instead, the answer is simply that the statutes work together. Section 1595 establishes *who* is civilly liable for trafficking. Section 2255 provides further remedies for children injured by that trafficking.

---

[1] The statute states, in relevant part: "Any person who, while a minor, was a victim of a violation of section . . . 1591 . . . of this title and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court." 18 U.S.C. § 2255(a).

Notably, the application of § 2255 to a minor sex-trafficking case is different than the application of § 2255 to the other enumerated sections. For the sexual-abuse, child-pornography, and Mann Act predicates in § 2255, the only related law to look at is the criminal statute itself, which is why courts have looked to those statutes to decide who may be sued. But when Congress added §§ 1589, 1590, and 1591 to the list in 2013, Pub. L. No. 113-4, § 1212, 127 Stat. 54, 143, it added predicates that come with their own answer to that question, twice over: § 1591(a)(2) makes one who knowingly benefits from participation in a trafficking venture a violator of § 1591, and § 1595(a) specifies who is civilly liable to the victim of a violation of this chapter, expressly including those who knowingly benefit from a venture they knew or should have known was engaged in trafficking. Safi's reading does not merely insert "the perpetrator" after "may sue" in § 2255; it reads § 1591(a)(2) and § 1595(a) entirely out of the scheme Congress built, and it does so for the one set of predicates where Congress took the trouble to say exactly who answers for the violation.

C.G. alleges that she was sex trafficked at Safi's hotel, in violation of § 1591, when she was seventeen years old, that Safi's employees knowingly assisted her trafficker, and that Safi financially benefited from her exploitation. [Doc. 19 ¶¶ 9–19, 25–26, 98–100]. These allegations state a claim under § 1595 and § 2255. Even if the statute were restricted to perpetrators (for the reasons below, it's not), the FAC alternatively alleges that Safi itself violated § 1591.

### A. Section 2255 Permits Civil Claims Against Beneficiaries of Sex Trafficking.

The problem with Safi's argument is that it requires the Court to add words to one law that Congress wrote and ignore the related law Congress wrote. That the Court cannot do. *Mamani v. Berzain*, 825 F.3d 1304, 1310–11 (11th Cir. 2016) ("We could do all of that without any problem—if only we were Congress. But unless and until the first and third branches of government swap duties and responsibilities, we cannot rewrite statutes.").

Instead, what courts must do is harmonize the statutes Congress actually wrote. *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 941 (11th Cir. 2001) ("[C]ourts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible."). Here, there are three statutes relating to the same subject matter which must be read together: §§ 1591, 1595, and 2255.

When Congress expanded § 2255 in 2013 to include minor sex-trafficking offenses, it wasn't writing on a blank slate. "Congress is presumed to know the content of existing, relevant law." *Griffith v. United States*, 206 F.3d 1389, 1394 (11th Cir. 2000). By 2013, the "existing, relevant law" was § 1595, where Congress had already expressly established civil liability not only for perpetrators of sex trafficking, but also for those who knowingly benefited from ventures they knew or should have known were engaged in trafficking. 18 U.S.C. § 1595. And, as the Supreme

Court has noted, "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 115 (2014). Thus, the Court must read these three statutes together, giving effect to each rather than interpreting one to undermine the others.

Here, that is simply done. Section 1591 identifies the prohibited conduct, what sex trafficking is and what a violation consists of. Section 1595 provides *who* may be civilly liable to a victim of a violation of § 1591 and *what* the elements of a claim are for a victim of a violation of § 1591. Finally, § 2255 provides *even more* remedies to *minor* victims of a violation of § 1591 but does not otherwise change or abrogate the other two statutes at all. It simply goes further: making the permissive attorney's fees in § 1595 mandatory for minor victims, providing liquidated damages for minor victims, and removing the statute of limitations for minor victims. To be sure, a minor victim of § 1591 must bring a claim specifically under § 2255, as C.G. did,[2] but otherwise, nothing in the statute changes the structure and provisions Congress wrote regarding what a violation is (§ 1591), who may be sued, and what the elements of such a claim are (§ 1595(a)). Safi's argument ignores the breadth of Congress's remedial anti-sex-trafficking statutory scheme. The answer is simply that Congress

[2] The statute of limitations provision notes that a complaint must be filed "under this section." § 2255(b).

legislated in 2013 knowing that § 1595 identified the elements and potential defendants already. That reading gives effect to the entire statutory scheme without requiring the Court to invent new standards of liability or restrictions not found in the statute's text.

The text is also against Defendant. In *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, the court recognized that "the plain language of § 2255 provides only that a minor victim of enumerated sex offenses 'may sue in any appropriate' district court; the statute does not specify against whom that lawsuit may be brought." 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012). As the court explained, "[h]ad Congress intended to limit liability in this respect, it could have done so by including such qualifying language in the statute." *Id.* at 1340. As noted, Congress expressly identified perpetrators and beneficiaries as proper civil defendants in § 1595(a) but included no comparable limitation in § 2255.

The Northern District of Alabama also rejected this exact argument, holding that "[n]othing in § 2255 limits claims under the statute to only perpetrators." *Bates v. Sequel Youth & Family Servs., LLC*, No. 2:23-CV-01063-RDP, 2025 WL 2917756, at *5 (N.D. Ala. Oct. 14, 2025). On reconsideration, the court reaffirmed that conclusion in a case involving plaintiffs who alleged that the defendant benefited from predicate trafficking violations under § 1595. *Bates v. Sequel Youth &*

*Family Servs., LLC*, No. 2:23-CV-01063-RDP, 2026 WL 86833, at *5 (N.D. Ala. Jan. 12, 2026).

*Central Bank* does not help Safi because nothing here is implied. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). *Central Bank* forbids courts from *inferring* aiding-and-abetting liability not mentioned in a statute. 511 U.S. at 182. Every case Safi cites applied that rule to plaintiffs who asked a court to extend § 2255 to people who assisted a perpetrator under a predicate that says nothing about third parties. *See Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281–82 (D. Conn. 2013); *Mandel v. Daskal*, 2025 WL 2452362 (E.D.N.Y. Aug. 25, 2025). C.G. asks for nothing of the kind. The liability she invokes is express, twice over: § 1591(a)(2) makes a knowing beneficiary a primary violator of the predicate itself, and § 1595(a) provides who answers civilly for a violation of the chapter. There is nothing for the Court to imply. The Court must simply look at the liability created by Congress in § 1595 and read the statutes together to understand the liability context Congress legislated against in 2013. *Tug Allie-B,* 273 F.3d at 941.

Nor does § 2255's requirement that the plaintiff suffer personal injury "as a result of" a predicate violation require that the civil defendant personally commit the offense. That language establishes a causal requirement between the predicate violation and the plaintiff's injury. *See Brown v. Gardner*, 513 U.S. 115, 119 (1994).

As *Jane Doe No. 8* explained, the criminal statutes punish offenders, while § 2255 compensates victims. Consequently, "it does not follow that there must be symmetry in liability." 860 F. Supp. 2d at 1340. Safi's interpretation errs by restricting civil liability to criminal perpetrators despite express statutory provisions to the contrary.

Here, C.G. alleges that she was trafficked for sex at Safi's hotel when she was seventeen years old and suffered personal injuries as a result. [Doc. 19 ¶¶ 9–26, 110–112]. She further alleges that Safi knowingly benefited from participation in the trafficking venture by receiving room-rental revenue while its employees cooperated with her trafficker, accepted bribes, and acted as lookouts. Id. ¶¶ 17–19, 25–26, 98–100. Those allegations support Safi's beneficiary liability under § 1595(a)—a claim Safi has not moved to dismiss—and provide a factual basis for C.G.'s claim under § 2255. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024).

Because § 2255 does not restrict civil liability to criminal perpetrators, Safi's proposed limitation provides no basis for dismissing Count II.

**B. The FAC Independently Alleges That Safi Violated § 1591.**

Even accepting Safi's proposed interpretation that § 2255 is limited to criminal perpetrators, C.G. states a claim because she alleges that Safi is a perpetrator who violated § 1591. Safi's argument depends on an unauthorized finding of fact that it was a passive hotel operator that merely rented rooms where trafficking

occurred. The FAC alleges something different: hotel employees knowingly facilitating the trafficking of a child, assisting her trafficker, and financially benefiting from the operation. [Doc. 19 ¶¶ 17–19, 25–26, 98–100].

Section 1591(a) prohibits knowingly harboring or maintaining a person for commercial sex trafficking *and* knowingly benefiting from participation in a venture engaged in such conduct. 18 U.S.C. § 1591(a)(1)–(2). Unlike civil beneficiary liability under § 1595, criminal liability under § 1591 requires the requisite knowledge or reckless disregard, together with the participation required by the statute. C.G. alleges facts supporting both.

Although knowledge may be alleged generally under Rule 9(b), C.G. pleads specific facts supporting an inference of actual knowledge. Approximately thirty-five buyers visited the rooms occupied by C.G. and the other victims each day. [Doc. 19 ¶¶ 10–12]. C.G., then seventeen years old, appeared with her older male trafficker at check-in and when he changed rooms. Id. ¶¶ 15–16. Front-desk employees warned her trafficker when police were on the property. Id. ¶ 17. Housekeeping employees repeatedly encountered C.G. and removed trash containing used condoms and other evidence of commercial sex. Id. ¶¶ 17–19. The FAC further alleges that employees accepted bribes, acted as lookouts, and facilitated the continuation of C.G.'s trafficking. Id. ¶¶ 25–26, 99–100.

These are not merely allegations that Safi should have recognized warning signs of trafficking. Warning a trafficker about police activity, accepting bribes, and knowingly disposing of evidence support an inference that employees understood what was occurring and affirmatively assisted its continuation. Section 1591(e)(4) defines participation in a venture to include knowingly "assisting, supporting, or facilitating" a violation of § 1591(a)(1). Safi's alleged conduct falls within that definition and constitutes more than an ordinary room-rental transaction or passive observation. *See A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269 (11th Cir. 2026); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021).

Courts have recognized that hotel operators can themselves violate § 1591. In *United States v. Bhimani*, hotel operators were convicted of sex-trafficking offenses based on evidence that they knowingly rented rooms to traffickers, permitted check-ins under assumed names or without identification, continued renting rooms despite known trafficking activity, and financially benefited from the operation. No. 3:17-cr-00324-MEM, 2021 WL 5179196, at *9 (M.D. Pa. Nov. 8, 2021).

The allegations here are at least as egregious. C.G. alleges not only repeated room rentals to a known trafficker but affirmative assistance through police warnings, bribes, and removal of evidence. [Doc. 19 ¶¶ 15–19, 25–26, 99–100]. Safi's employees continued providing rooms and services to her trafficker while knowing that C.G. was being sold for sex there. *Id.* ¶¶ 15–19, 25–26. The FAC further alleges

that Safi financially benefited from its knowing participation in the venture through room-rental revenue and other benefits. Id. ¶¶ 26, 98–100. These allegations also support a predicate violation of § 1591(a)(2).

Indeed, a court in this District denied dismissal of § 2255 claims against hotel operators where the plaintiffs' TVPRA allegations supported an inference that the defendants either harbored and maintained trafficking victims in violation of § 1591(a)(1) or financially benefited from participation in a venture that did so in violation of § 1591(a)(2). *Roseberry v. Studio 6 Delk Rd., LLC*, 815 F. Supp. 3d 1325, 1338 (N.D. Ga. 2025).

Safi's reliance on cases involving mere commercial relationships or passive knowledge is therefore misplaced. In addition to negligent actions, the FAC alleges criminal conduct, active cooperation with a trafficker, repeated assistance in concealing his criminal activity, and financial benefit from the continued trafficking of a minor child. Those allegations support an inference that Safi itself engaged in conduct prohibited by § 1591(a)(1) and (a)(2). Accordingly, even if § 2255 were limited to claims against criminal perpetrators, C.G. has plausibly alleged that Safi violated § 1591. Because C.G. states a claim under either theory of liability, Safi's motion to dismiss Count II should be denied.

## II. Count III States a Timely Georgia Public-Nuisance Claim.

Georgia law defines a nuisance as "anything that causes hurt, inconvenience, or damage to another," where the harm would affect an ordinary, reasonable person. O.C.G.A. § 41-1-1. A public nuisance is one that "damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. This does not require proof that every person in the surrounding area suffered injury. *City of Douglasville v. Queen*, 270 Ga. 770, 774 (1999). Rather, a public nuisance exists when the condition injures members of the public who encounter it and affects rights common to those within its sphere of operation. *Id.*; *see also Atlanta Processing Co. v. Brown*, 227 Ga. 203, 211 (1971).

Georgia has long recognized that "[a] lewd house is per se a public nuisance." *Brindle v. Copeland*, 145 Ga. 398, 398 (1916). Courts in this District have applied Georgia nuisance law to hotels where prostitution, sex trafficking, and related criminal activity repeatedly occurred. *See I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1345–46 (N.D. Ga. 2024) (finding evidence sufficient for a jury to conclude that a hotel fostered an environment permitting recurring trafficking, prostitution, and criminal activity); *E.M. v. Tucker Inn Inc.*, No. 1:22-cv-02559-WMR, 2024 WL 4005218, at *6 (N.D. Ga. July 15, 2024) (same).

**A. Plaintiffs' Nuisance Claims Are Timely.**

A public nuisance implicates rights shared by the community as a whole, rather than merely the private interests of particular individuals. *Wasserman v. Franklin Cnty.*, 320 Ga. 624, 634 (2025). The FAC alleges precisely such a condition: recurring prostitution, sex trafficking, and related criminal activity occurring openly throughout the hotel and its surrounding premises. [Doc. 19 ¶¶ 53–76, 118–126]. The alleged activity was not confined to isolated encounters involving C.G. and T.D.; others were exposed to the same criminal environment. *Id.* ¶¶ 38, 46, 69–73, 119. These allegations describe a recurring condition affecting persons within the nuisance's sphere of operation, not merely separate acts of abuse against two individuals.

A private plaintiff may bring the public's claim of nuisance and recover only upon a showing of special damage. O.C.G.A. § 41-1-3. As the Georgia Supreme Court explained in *Ison v. Manley*, the plaintiff must suffer "special damage outside of that which also annoys and hurts the public." 76 Ga. 804, 807 (1886). A personal injury to life and health is always of a different kind of damage than experienced by the public sufficient to meet the requirement of special or extraordinary damage for maintaining a private action for public nuisance. *Savannah, F. & W. Ry. Co. v. Parish*, 117 Ga. 893, 896 (1903). The FAC alleges that C.G. and T.D. were themselves victims of the nuisance and suffered particularized physical and psychological

injuries as a result. [Doc. 19 ¶¶ 9–48, 121]. Those injuries constitute special damage distinct from the harm suffered by the public generally.

Georgia courts have long recognized that the ordinary statute of limitations does not run in favor of a public nuisance because the public's rights cannot be defeated by imputing laches to the public.[3] *McArthur v. Beech Haven Baptist Church of Athens*, 361 Ga. App. 877, 864 S.E.2d 189, 193 (2021) (holding that "[a] public nuisance claim is not governed by a traditional statute of limitation" when addressing claims from the 1950s to the 1980s)(*McArthur I*); *McArthur v. Beech Haven Baptist Church of Athens*, 368 Ga. App. 525, 890 S.E.2d 427, 428 (2023) (reaffirming the holding in *McArthur I* that was not implicated by the Supreme Court's decision in *St. Joseph's*)(*McArthur II*).

[3] *See also Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 716, 850 S.E.2d 267, 273 (2020), *rev'd and vacated on other grounds*, (Noting that public nuisance "is not governed by a traditional statute of limitations" and thus 42-year-old allegations not outside the statute of limitations for public nuisance); *Davis v. City of Forsyth*, 275 Ga. App. 747, 621 S.E.2d 495, 499 (2005) ("The ... statute of limitations does not run in favor of ... public nuisances [because] of the impropriety of imputing laches to the public.") (alterations in original); *Anneberg v. Kurtz*, 197 Ga. 188, 194, 28 S.E.2d 769, 773 (1944) (same); *Loughridge v. City of Dalton*, 166 Ga. 323, 143 S.E. 393, 395 (1928) (same); *Watkins v. Pepperton Cotton Mills*, 162 Ga. 371, 134 S.E. 69, 71 (1926) (same); *Norrell v. Augusta Ry. & Elec. Co.*, 116 Ga. 313, 42 S.E. 466, 466–67 (1902) (same); *Phinizy v. City Council of Augusta*, 47 Ga. 260, 268–69 (1872) ("The rule that the statute of limitations does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public.").

Safi nevertheless asks this Court to do what has never been done and apply O.C.G.A. § 9-3-33, Georgia's two-year limitations period for personal injuries, to a public-nuisance claim. But a *public* nuisance implicates a *public* right, and § 41-1-3 permits an individual who suffers special damage to recover for injuries arising from that nuisance. *See Wasserman*, 320 Ga. at 635. The fact that Plaintiffs allege personal injuries establishes the special damage necessary to confer standing to sue; it does not transform their public-nuisance claims into personal-injury claims or subject them to the two-year limitations period.

Neither *Daniel v. American Optical Corp.*, 251 Ga. 166 (1983), nor *Georgia Railway & Electric Co. v. Tompkins*, 138 Ga. 596 (1912), supports Safi's position. *Daniel* addressed the relationship between the two-year personal-injury statute of limitations and the ten-year statute of repose applicable to strict-products-liability claims. 251 Ga. at 167–68. No public-nuisance claim was asserted, and the alleged wrongdoing did not implicate public rights. *Tompkins*, meanwhile, held that a personal-injury claim arising from an unlawfully constructed catch basin was timely because the plaintiff suffered his injury within two years of filing suit, even though the structure had been built years earlier. 138 Ga. at 599–600. Neither case addressed whether the two-year personal-injury statute of limitations applies to claims for special damages arising from a public nuisance.

Unlike *Daniel* and *Tompkins*, *Roseberry* addressed the precise limitations question presented here: whether Georgia's two-year personal-injury statute of limitations bars a public-nuisance claim arising from sex trafficking at a hotel. 815 F. Supp. 3d at 1338. Chief Judge May held that it does not. *Id.* More recently, Judge Cohen reached the same conclusion in another hotel sex-trafficking case, expressly recognizing that Georgia's statute of limitations does not apply to public-nuisance claims. *T.S.*, No. 1:25-cv-05444-MHC, Doc. 21 at 15 n.3, 20.[4] Both decisions involved claims arising from trafficking that occurred years before suit was filed. *See Roseberry*, 815 F. Supp. 3d at 1329–30 (trafficking between 2012 and 2016; suit filed in February 2025); *T.S.*, No. 1:25-cv-05444-MHC, Doc. 21 at 2–3, 18 (trafficking from November 2017 through February 2018; suit filed in September 2025). Safi identifies no intervening authority undermining either decision or any persuasive reason for treating Plaintiffs' public-nuisance claims differently.

Because Plaintiffs' claims arise from a nuisance implicating public rights, the nature of their individual injuries does not subject those claims to the two-year personal-injury statute of limitations. Safi's limitations defense therefore provides no basis for dismissing Count III.

---

[4] *See* Ex. 1, *T.S.*, No. 1:25-cv-05444-MHC, Doc. 21 at 15 n.3, 20.

### B. The FAC Alleges Facts Sufficient to Support a Public-Nuisance Claim and Special Damage.

Safi argues that Plaintiffs fail to state a public-nuisance claim because their alleged injuries did not result from the purported blighting effect or criminal activity affecting the surrounding community. [Doc. 21 at 17–18]. An appreciable blighting effect on the surrounding community may establish the public character of a nuisance, but Plaintiffs must suffer "special damage outside of that which also annoys and hurts the public." *Ison*, 76 Ga. at 807. Here, the alleged public nuisance was the environment of recurring prostitution, sex trafficking, and related criminal activity at the Super 8, and such conditions create "an environment that would be dangerous and unhealthy for anyone." [Doc. 19 ¶¶ 71–73]. C.G. and T.D. were themselves victims of the sex trafficking at the Super 8 and each suffered particularized physical and psychological injuries as a result. *Id.* ¶¶ 9–48, 121.

And contrary to Safi's characterization, the FAC alleges far more than a generalized assertion of community blight. It describes recurring prostitution and sex trafficking extending beyond individual hotel rooms into the Super 8's common areas, parking lot, driveway, and surrounding streets, where women and girls openly solicited buyers and commercial sex occurred in vehicles. [Doc. 19 ¶ 71]. These conditions exposed hotel guests, residents, visitors, and members of the surrounding community to prostitution, drugs, violence, armed pimps, and other criminal activity. *Id.* ¶¶ 72–73. Again, as the court recognized in *Northfield Insurance Co. v.*

*Northbrook Industries, Inc.*, such conditions create "an environment that would be dangerous and unhealthy for anyone." 749 F. Supp. 3d 1325, 1338 (N.D. Ga. 2024). The FAC further alleges that the pervasive criminal activity spilled into the surrounding area, contributing to additional crime and an appreciable blighting effect on the community. [Doc. 19 ¶¶ 118–120]. These factual allegations describe how the alleged nuisance affected persons beyond the individual trafficking victims and implicated rights shared by those within its sphere of operation.

Nor does *McArthur II*, compel dismissal. There, the court addressed concealed sexual abuse and the *absence* of allegations establishing harm to the public or an appreciable blighting effect on the surrounding community. *Id.* at 534–35. Here, by contrast, the FAC alleges an open, recurring commercial-sex operation accompanied by criminal activity throughout the hotel and its surrounding premises. [Doc. 19 ¶¶ 53–76]. The FAC therefore plausibly alleges both a public nuisance and the special damage necessary for Plaintiffs to recover.

The FAC thus alleges a recurring condition of prostitution, sex trafficking, and related criminal activity affecting the hotel and surrounding community as well as particularized injuries suffered by Plaintiffs as a result. These allegations are sufficient to state a public-nuisance claim under Georgia law.

### C. The FAC Alleges Facts Sufficient to Support a Public Nuisance per se Claim.

Georgia law separately recognizes certain premises as public nuisances per se because of the unlawful activities for which they are maintained. "A lewd house is per se a public nuisance." *Brindle*, 145 Ga. at 398. Likewise, the Georgia Court of Appeals has recognized bawdy-houses and gaming-houses as categories of disorderly houses constituting nuisances per se. *Fanning v. State*, 17 Ga. App. 316, 317 (1915).

The existence of lawful business activity at the same premises does not defeat that characterization. In *Fitzgerald v. State*, the Georgia Court of Appeals upheld a lewd-house conviction involving premises operated as a restaurant and lodging house, notwithstanding that legitimate guests stayed there, only one act of intercourse was directly proven, and the proprietor's personal knowledge of that act was not established. 10 Ga. App. 70, 71–72 (1911).

Safi's attempt to characterize the alleged nuisance as one *per accidens* misses the distinction. [Doc. 21 at 18–19]. It also requires an improper finding of fact in Safi's favor at the pleading stage. Georgia law recognizes premises maintained for prostitution as a nuisance per se. *Brindle*, 145 Ga. at 398. The FAC alleges precisely such a condition: recurring prostitution and sex trafficking openly occurring throughout the hotel, where, for a fee, Safi provided a market for traffickers to sell women and children for sex. [Doc. 19 ¶¶ 53–76, 95]. And Safi was not merely a

passive observer of that activity. Its employees warned traffickers when police arrived, knowingly disposed of evidence of sex trafficking, and helped traffickers conceal their operations. *Id.* ¶¶ 17–19, 25–26, 44. According to a maintenance worker who lived and worked at the Super 8, hotel management and staff were fully aware of the prostitution and trafficking occurring there. *Id.* ¶¶ 52–61. These allegations plausibly establish both a nuisance per se and Safi's responsibility for its continuance and maintenance.

Plaintiffs' allegations of personal injuries establish their right to recover special damages from the alleged public nuisance; they do not eliminate the public character of that nuisance or convert Count III into an ordinary personal-injury claim. Defendant's motion should be denied.

## III. Safi's Remaining Arguments Do Not Warrant Dismissal.

Safi's remaining arguments provide no basis for dismissal.

*First*, Rule 10(b) does not categorically require separate counts for each plaintiff asserting the same cause of action. It requires separation when doing so would promote clarity. Fed. R. Civ. P. 10(b). Count III identifies both Plaintiffs, the alleged public nuisance, and the injuries each sustained. [Doc. 19 ¶¶ 118–126]. Their trafficking at different times does not render their common nuisance claim unintelligible.

*Second*, the FAC does not become a shotgun pleading because it includes allegations concerning inadequate security, training, and supervision without asserting a separate negligence claim, or because it alleges both direct and vicarious liability. Those allegations bear on Safi's knowledge and conduct, and the FAC identifies the factual basis for holding Safi responsible. Whether those allegations ultimately establish liability is distinct from whether Safi has adequate notice of the claims against it.

*Third*, incorporating preceding allegations into the damages section does not obscure the causes of action or their factual bases. The relevant inquiry is whether the FAC provides adequate notice of the claims against Safi and the grounds upon which they rest. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). It does.

*Fourth*, the Court has, and should exercise, supplemental jurisdiction over T.D.'s nuisance claim. Section 1367(a) extends to claims involving additional parties that arise from a common nucleus of operative fact. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566–67 (11th Cir. 1994). Both Plaintiffs' claims concern Safi's ownership and management of the same hotel and its alleged continuing use for prostitution and sex trafficking. [Doc. 19 ¶¶ 1, 8, 49–76, 118–126]. Their claims involve overlapping evidence concerning Safi's employees, management practices, knowledge of trafficking, and the conditions at the property. *Id.* ¶¶

15–19, 25–26, 30–45, 49–76. Although their trafficking occurred three years apart, evidence of T.D.'s trafficking and the conditions observed before C.G.'s trafficking bears on Safi's prior knowledge—an issue central to C.G.'s federal claims. *Id.* ¶¶ 9, 27, 30–45, 49–61, 85–100. The claims thus involve similar occurrences, witnesses, and evidence sufficient to support supplemental jurisdiction. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996).

Nor does § 1367(c) warrant declining jurisdiction. Georgia public-nuisance law is established, C.G. independently asserts the same nuisance claim, and T.D.'s claim does not substantially predominate over C.G.'s federal claims. Further, because the claims are so intertwined, separating the claims would instead duplicate litigation concerning the same hotel's management, practices, and knowledge. *See Malphurs v. Cooling Tower Sys., Inc.*, 709 F. App'x 935, 940 (11th Cir. 2017).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Safi's Motion to Dismiss in its entirety. Alternatively, should the Court identify any pleading deficiency, Plaintiffs request leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

1.

Respectfully submitted this 12th day of November, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Caroline M. Capps*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
CAROLINE M. CAPPS
Georgia Bar No. 645599
ccapps@atclawfirm.com
Attorneys for Plaintiffs

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Caroline M. Capps*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
CAROLINE M. CAPPS
Georgia Bar No. 645599
ccapps@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile